CHESAPEAKE & OHIO RAILWAY COMPANY
*v.* POWELL ET AL.

[No. 16,925.   Filed November 12, 1942.   Rehearing denied
December 22, 1942.   Transfer denied February 10, 1943.]

*Gus S. Condo*, of Marion, and *Albert H. Cole*, of Peru, for appellant.

*Hurd J. Hurst*, of Peru, and *Browne, Campbell, Gemmill & Browne*, of Marion, for appellee.

FLANAGAN, C. J.—In or about the year 1919 there was constructed and established according to law, in Miami County, Indiana, a ditch known as the Outland-Ballard ditch, following the route of Turkey Creek, a natural watercourse. This ditch is of tile with an open top ditch for surface drainage from the point of beginning to a point a short distance south of the right of way of appellant Chesapeake and Ohio Railway Company, where it becomes an open ditch which passes under the tracks of said railway. Originally this passageway was a trestle 35 feet long.

To the east of the Outland-Ballard ditch was a similar ditch known as the Saucer Ditch which found its outlet into the open part of the Outland-Ballard Ditch in a common header with the tile portion of the latter ditch. In 1927 appellant installed a sewer under its right of way where the ditch crossed, and filled in around this sewer where the trestle had been. The sewer so installed is elliptical in shape and the open portion thereof is about 7.5 feet high and seven feet wide with an opening area of 41.5 square feet.

Appellees, owners of farms lying south of appellant's right of way and within the area drained by the ditches above described, claim that this sewer is inadequate in size and capacity to carry away the waters of this drainage system and as a result they have suffered loss of growing crops. They brought this action for a mandatory injunction to require appellant to make a larger opening under its tracks and for damages for the loss of crops.

Appellant's motion to require appellees to make their complaint more specific was overruled and they then filed an answer in two paragraphs: (1) General denial; and (2) setting up the six-year statute of limitations. Trial was to the court which made a special finding of facts and entered conclusions of law in favor of appellees. Appellant's motion for a new trial was overruled and judgment was entered granting the relief prayed including damages. Appellant's motion to modify the judgment was likewise overruled.

Errors relied upon for reversal are: (1) Overruling appellant's motion to make the complaint more specific; (2) overruling appellant's motion for a new trial; and (3) overruling appellant's motion to modify the judgment.

The error pointed out in appellant's motion to modify the judgment has been admitted by appellees and remedied by a remittitur duly filed in this court.

Rulings on motions to make more specific are largely in the discretion of the trial court and this court will not consider such ruling cause for reversal unless the trial court is shown to have abused its discretion and the complaining party has been harmed. *Meyer* v. *Garvin, Receiver* (1942), 110 Ind. App. 403, 37 N. E. (2d) 291. The record here does not disclose that appellant was in any way harmed by the

court's ruling on its motion to make appellees' complaint more specific and therefore such ruling does not constitute reversible error.

The grounds of appellant's motion for a new trial are: (1) The damages assessed are excessive; (2) the decision of the court is not sustained by sufficient evidence; and (3) the decision of the court is contrary to law.

The sole question presented under each specification is the sufficiency of the evidence to show that any damage suffered by appellees was due to the inadequacy of the sewer installed by appellant. Appellant points to the fact that the tracks of appellant's railroad are on a lower elevation than the lands claimed to have been flooded and therefore the obstruction of appellant's right of way could not have backed up the surface water to a point higher and thereby ruined appellees' crops. Appellant insists that any testimony that such a thing happened would be so contrary to the laws of nature that it must be wholly disregarded.

But we do not understand that appellees contend that such a thing happened nor does the evidence seek to establish such a happening. Appellees contend that because of the inadequacy in size of the sewer under appellant's railroad tracks, the surface water was backed up in the open ditch so that it covered the opening of the 24-inch tile of the Outland-Ballard Ditch and the 20-inch tile of the Saucer Ditch, so as to cause a sort of dam there and thereby decrease the efficiency of the tile portion of the ditches and make it impossible for them to carry off the water in the low places on appellees' farms.

Two registered engineers testified as follows:

The sewer under appellant's railroad was inadequate. In the involved area rainfall of 2.75 inches was normal,

rainfall of 4 inches to be expected about every five years and good engineering requires designing a sewer with capacity to drain a 4-inch rainfall. Using recognized and accepted engineering formulas the area of the sewer in question should have been 65.8 to 69.5 square feet to drain a 4-inch rainfall, and 48.22 square feet to drain a 2.75-inch rainfall. The area of the sewer as constructed is only 41.5 square feet. The depth of fall between the mouth of the tile and the outlet under the Chesapeake and Ohio railway is 3.81 feet so that when the sewer is running 5.81 feet full the outlet of the tile is completely submerged. This acts as a dam and holds the water back in the tile so that water that ordinarily would have gone down the tile is held back and thereby lessens the efficiency of the tile portion of the drain.

It is apparent from the above evidence of the engineers that damage could result from the inadequacy of the sewer if the flow of water through the sewer remained at a height of 5.81 feet above the bottom thereof for a sufficient length of time.

There is no direct evidence as to how long at a time the flow through the sewer did remain at or above the 5.81 feet mark. But a number of witnesses testified that the water was that high or higher on numerous occasions when they went there to look and that such was the case each time a freshet came, and that rains sometimes lasted during the most part of three or four days. There was evidence that the rainfall during the years after the sewer was installed was just about the same as over a corresponding period of time before it was installed; that no damage resulted from the water standing in the fields before the sewer was installed and that damage did result nearly every year after the sewer was installed.

6

We think the above evidence is sufficient to sustain the finding of the court that the damage resulted from the inadequacy of the sewer.

Judgment affirmed.

NOTE.—Reported in 44 N. E. (2d) 514.